**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:12-CV-392-FDW-DSC**

| | |
|---|---|
| **J & J SPORTS PRODUCTIONS, INC.,**  Plaintiff,  vs.  **FERNANDO GALLEGOS SISNIEGA, INDIVIDUALLY, and d/b/a LAS MAMACITAS CANTINA BILLAR MEXICANO,**  Defendant. | **ORDER AND DEFAULT JUDGMENT** |

**THIS MATTER** is before the Court on Plaintiff J & J Sports Productions, Inc.'s, ("Plaintiff") Motion for Default Judgment (Doc. No. 10). For the reasons set forth below, Plaintiff's Motion is GRANTED.

### BACKGROUND

Plaintiff filed suit for violations against Defendant Fernando Gallegos Sisniega, III, individually and d/b/a Las Mamacitas Cantina Billar Mexicano ("Defendant") on June 25, 2012, for violations of 47 U.S.C. § 553 and 605. (Doc. No. 1). Sisniega is the registered agent for Las Mamacitas Cantina Billar Mexicano. Plaintiff alleges that it was granted exclusive nationwide commercial distribution rights to *"Latin Fury 15": Cesar Chavez, Jr. v. John Duddy Championship Fight Program*, telecast nationwide on June 26, 2010, (including all under-card bouts and fight commentary encompassed in the television broadcast of the event; hereinafter referred to as the "Program"). (Doc. No. 1, p. 3). Plaintiff alleges that Defendant knew the Program was not to be intercepted, received, and exhibited without authorization from Plaintiff.

Id. Nevertheless, Defendant displayed the Program without authorization.

These allegations are supported in an affidavit from a private investigator detailing the activities in Las Mamacitas Cantina Billar Mexicano (the "Establishment"). (Doc. No. 10). An investigation revealed that the Establishment contained about forty-seven patrons and one projection screen showing the Program. Plaintiff further alleges that Defendant's unauthorized exhibition was done willfully and for purposes of direct or indirect commercial advantage or private financial gain. (Doc. No. 1). Plaintiff also alleges that, by these same acts, Defendant "tort[i]ously obtained possession of the Program and wrongfully converted it to [their] own use and benefit." Id. at 6. Plaintiff claims that these acts were willful, malicious, and intentionally designed to harm Plaintiff, and to subject Plaintiff to economic distress. Id.

Plaintiff served Defendant with the Summons and Complaint in this action on January 16, 2013. (Doc. No. 7). Defendant had until February 6, 2013, to answer or otherwise respond. See Fed. R. Civ. P. 12(a)(1)(A)(i). Defendant failed to respond within this time, and Plaintiff subsequently moved for entry for default judgment on February 18, 2013. (Doc. No. 8). The Clerk's office entered default against Defendant on February 20, 2013. (Doc. No. 9). Plaintiff then moved for default judgment on April 4, 2013. (Doc. No. 10). Defendant has not responded, and the time for doing so has expired. See Fed. R. Civ. P. 12(a)(4).

**LEGAL STANDARD**

The award of default judgment is governed by Rule 55(a) of the Federal Rules of Civil Procedure, which provides in relevant part that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Upon entry of default, a defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the

complaint. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001); Weft, Inc. v. GC Inv. Assocs., 630 F. Supp. 1138, 1141 (E.D.N.C. 1986) (citations omitted); see also Fed. R. Civ. P. 8(b)(6) ("An allegation-other than one relating to the amount of damages-is admitted if a responsive pleading is required and the allegation is not denied."). However, the defendant is not deemed to have admitted conclusions of law, and the entry of "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Ryan, 253 F.3d at 780 (citations omitted); see also E.E.O.C. v. Carter Behavior Health Servs., Inc., No. 4:09–cv–122–F, 2011 WL 5325485, at *3 (E.D.N.C. Oct. 7, 2011). Rather, in determining whether to enter judgment on the default, the court must determine whether the well-pleaded allegations in the complaint support the relief sought. See Ryan, 253 F.3d at 780 (citing Weft, 630 F. Supp. at 1141); DIRECTV, Inc. v. Pernites, 200 F. App'x 257, 258 (4th Cir. 2006) (a "'defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law'") (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)); Arista Records, LLC v. Gaines, 635 F. Supp. 2d 414, 416 (E.D.N.C. 2009); 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

To that end, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Univ., Inc., 616 F.3d 413, 417 (4th Cir. 2010) (citations omitted). Nonetheless, default judgment "may be appropriate when the adversary

3

process has been halted because of an essentially unresponsive party." SEC v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the court finds that liability is established, it must then determine damages. Carter Behavior Health, 2011 WL 5325485, at *4 (citing Ryan, 253 F.3d at 780-81; Gaines, 635 F. Supp. 2d at 416-17). The court must make an independent determination regarding damages and cannot accept as true factual allegations of damages. Id. (citing Lawbaugh, 359 F. Supp. 2d at 422). While the court may conduct an evidentiary hearing to determine damages, it is not required to do so, but may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. See E.E.O.C. v. North Am. Land Corp., No. 1:08–cv–501, 2010 WL 2723727, at *2 (W.D.N.C. Jul.8, 2010).

## ANALYSIS

As discussed above, Plaintiff alleges that Defendant intercepted the Program willfully and for purposes of direct or indirect commercial advantage or private financial gain. To support these allegations, Plaintiff hired a private investigator to conduct an investigation of the Establishment. This investigation uncovered one projection screen displaying the Program and numerous patrons within the Establishment. The facts in the Complaint are deemed admitted by Defendant's failure to respond. Ryan, 253 F.3d at 780.

Accordingly, the Court holds that Defendant violated 47 U.S.C. § 553 and 605. Plaintiff is entitled to an award of damages as a result, and this Court has the discretion to award damages as it considers just. See 47 U.S.C. § 605(e)(3)(c)(i)(II).

**A. Statutory Damages under 47 U.S.C. § 605(e)(3)(c)(i)(II)**

Plaintiff seeks the maximum statutory damages under both 47 U.S.C. § 553(3)(B) and 47 U.S.C. § 605(e)(3)(c)(i)(II). Plaintiff may not recover a default judgment that "differ[s] in kind,

4

or exceed[s] in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); Eddins v. Medlar, Nos. 87–2602, 89–2910, 1989 WL 87630, at *3 (4th Cir. July 21, 1989). Plaintiffs, however, may not recover under both Sections 553 and 605. Integrated Sports Media, Inc. v. Buruca Brother's Va., Inc., No. 1:11–cv–839, 2011 WL 5873078, at *5 (E.D. Va. Nov. 1, 2011) (citing Kingvision Pay–Per–View, Ltd. v. Gutierrez, 544 F. Supp. 2d 1179, 1184 (D. Co. 2008)); Time Warner Cable of New York City v. Sanchez, No. 02 Civ. 5855, 2003 WL 21744089, at *3 (S.D.N.Y. July 8, 2003). Generally, when a plaintiff seeks recovery under both sections, courts evaluate their claims under Section 605 because it provides for higher potential recovery. Buruca Brother's, 2011 WL 5873078, at *5 (when a party is unclear when seeking damages under Section 605 or Section 553, Section 605 is applied due to the higher potential recovery); see also 47 U.S.C. §§ 553(3)(B), 605(e)(3)(C)(ii). Furthermore, Plaintiff may not recover conversion damages in addition to actual or statutory damages under Section 605. See Joe Hand Promotions, Inc. v. Dock Street Enters., Inc., No. 11–1973, 2011 WL 6141058, at *5 n.5 (D. Md. Dec. 8, 2011); J & J Sports Prods., Inc. v. J.R.'Z Neighborhood Sports Grille, Inc., No. 9–3141, 2010 WL 1838432, at *2 (D.S.C. Apr. 5, 2010).

For violations of Section 605, courts generally employ two approaches to determine the precise amount of statutory damages: (1) calculating the amount based on the number of patrons in the establishment during the broadcast or the price of the licensing fee based on the maximum occupancy of the establishment; or (2) a flat damage amount applied as the court sees just. J&J Sports, Inc., v. Waters, No. 3:12-cv-779, 2013 WL 2948318, at *3 (W.D.N.C. June 14, 2013); Buruca Brother's, 2011 WL 5873078, at *5; see also 47 U.S.C. § 605(e)(C)(i)(II).

Here, Plaintiff asks this Court to apply a flat damage amount of $10,000, which is the maximum recovery for statutory damages. Regardless of the method, in determining what

amount is appropriate, the Fourth Circuit weighs several factors, referred to as the "Nalley factors," which include: (1) the severity of the violation; (2) the degree of harm to the plaintiff; (3) the relevant financial burdens of the parties; and (4) the purpose to be served by imposing statutory damages. DIRECTV, Inc. v. Rawlins, 523 F.3d 318, 330 n.8 (4th Cir. 1995) (citing Nalley v. Nalley, 53 F.3d 659 (4th Cir. 1995)). In addition, this Court must consider the weight Congress attaches to the seriousness of the issue. See J & J Sports Prods., Inc. v. Olmos, No. 5:08-cv-33, 2010 WL 625283, at *2 (W.D.N.C. Feb. 19, 2010).

Employing the first method, the Court notes that the private investigator who entered the Establishment made one head count to determine the number of patrons. The number counted was forty-seven patrons. The legal price to obtain a licensing fee would be $1,200 based on the seventy-five person maximum occupancy of the Establishment. (Doc. No. 11). Thus, employing the approach that calculates damages based on the maximum number of patrons would allow a recovery of $1,200 under 47 U.S.C. § 605(e)(3)(c)(i)(II). However, in light of the Nalley factors, the Court finds this method awards an insufficient amount of statutory damages. Rather than choosing the first approach, the Court elects to apply the second method, which utilizes a flat damage amount. See Waters, 2013 WL 2948318, at *3.

Applying the flat damage approach, Plaintiff requests the maximum amount of $10,000 under 47 U.S.C. § 605(e)(C)(i)(II). To determine if this amount is appropriate the Court applies the Nalley factors. The first of the Nalley factors, the severity of a violation, may be shown through the commercial gain to Defendant received from the pirating of the Program. Waters, 2013 WL 2948318, at *4; J & J Sports Prods., Inc., v. Las Chivas, Inc., No 5:10-CV-187, 2012 WL 71819, at *3 (W.D.N.C. Jan. 10, 2012). For instance, in Olmos, the establishment that displayed an illegally-intercepted cable program had a maximum capacity of 160 patrons. 2010

WL 625283, at *1. However, at the time the program was displayed, only twelve patrons were present in the establishment. Id. Regardless of the small number of patrons who viewed the program, the court still awarded statutory damages of $5,000. Id.

Here, Defendant could have obtained a licensing fee for $1,200 to display the Program. As discussed above, forty-seven patrons were present in the Establishment, and the maximum occupancy was seventy-five persons. (Doc. No. 10). Thus, these facts clearly indicate a commercial gain, and, with respect to the number of patrons in the establishment, the situation presents a more severe violation than the Olmos case. Therefore, the severity of the violation indicates that statutory damages should be greater than the price for the licensing fee.

With respect to the second and third Nalley factors, the harms and the financial burdens of the parties, Plaintiff claims losses of millions of dollars in revenue and costs related to the pirating of cable programs. Defendant did not solely cause this amount of loss but directly contributed to the cumulative detrimental impact of many instances of piracy. In addition, there are various intangible losses that cannot be accounted for, such as damage to the "good will" and "reputation" of the company. (Doc. No. 11). Even though specific amounts may be difficult to determine, it is reasonable to assume that intercepting the Program harmed Plaintiff in indirect ways. Accordingly, these factors also indicate that increasing statutory damages is appropriate.

Under the fourth Nalley factor, the purpose of awarding statutory damages is to deter Plaintiff and other individuals from participating in illegally intercepting cable programs. See Waters, 2013 WL 294813, at *4; Las Chivas, 2012 WL 71819, at *3. Courts have awarded statutory damages that are substantially more than what the infringer would have paid in licensing fees in order to ensure deterrence. See, e.g., EMI April Music, Inc. v. Rodriguez, 691 F. Supp. 2d 632, 636 (M.D.N.C. 2010) (citing EMI April Music, 618 F. Supp. 2d at 508-09;

Broadcast Music, Inc. v. Boogie Down Prods., Inc., No. 1:04-CV-3526, 2006 WL 2619820 (N.D. Ga. May 9, 2006); Jobete Music Co., Inc. v. Media Broad. Corp., 713 F. Supp. 174 (M.D.N.C. 1988)). Therefore, the Court awards statutory damages in the amount of $2,000 to Plaintiff. This increase from the licensing fee of $1,200 reflects the desire to deter Defendant, as well as other individuals, from pirating cable programs.

### B. Enhanced Damages under 47 U.S.C. § 605(e)(C)(ii)

In addition to the above statutory damages, courts have the discretion to increase damages awarded for piracy if the "violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(C)(ii). Here, Plaintiff pled that Defendant intercepted its Program "willfully and for purposes of direct or indirect commercial advantage or private financial gain." (Doc. No. 1). Plaintiff requests enhanced damages of $100,000.

First, the facts indicate that Defendant willfully intercepted the Program. This Program could not have been mistakenly, innocently, or accidentally intercepted. (Doc. No. 11). Cable programs do not descramble spontaneously, thus Defendant must have taken affirmative steps to illegally intercept the program. (Doc. No. 11). For instance in Joe Hand Promotions, Inc., v. Angry Ales, Inc., the court stated, "[i]n order for [Defendant] to receive the closed circuit broadcast, it had to have engaged in some deliberate act, such as using an unauthorized decoder or altering the cable service in some way, so as to receive and view the scrambled transmission." 2007 WL 3226451, at *4 (quoting Time Warner Cable of New York v. Taco Rapido Restaurant, 988 F. Supp. 107, 111 (E.D.N.Y 1997)). Therefore, although the specific descrambling technique used in this case is unknown, it is apparent that Defendant did not accidently intercept the program. As such, the Court concludes Defendant "willfully" intercepted the Program under

47 U.S.C. § 605(e)(C)(ii).

Second, the violation was committed for direct or indirect commercial or private financial gain. This generally occurs if the violation takes place in a commercial establishment rather than a residence. See Waters, 2013 WL 2948318, at *6. Here, the interception of the Program took place at Las Mamacitas Cantina Billar Mexicano, a commercial establishment. Also, the private investigator indicated that there was a projection screen displaying the program to numerous patrons. (Doc. No. 10). It is reasonable to assume that the Program increased the amount of revenue from the sale of food and drinks by either increasing the amount of customers or having certain customers stay longer than they would ordinarily in order to watch the Program while purchasing food or drinks. Accordingly, these facts indicate that Defendant purposely intercepted the Program for commercial advantage.

Plaintiff's request of $100,000 in enhanced damages is the maximum amount allowed under 47 U.S.C. § 605(e)(c)(ii). Maximum damages may be awarded when the pleadings sufficiently and specifically show a defendant's "'illicit profit, the number of patrons who saw the Program at Defendants' establishment, or any history of similar violations.'" See Waters, 2013 WL 2948318, at *6 (stating maximum enhanced damages is not allowable when there is no specific and detailed investigation) (quoting J & J Sports, Inc., v. Romenski, 845 F. Supp. 2d 703, 708 (W.D.N.C. 2012)). In Romenski, there was no affidavit from a private investigator detailing how the investigation was conducted and the court did not award maximum enhanced damages. Id. Romenski is unlike the case at bar because, here, the private investigator, signed an affidavit specifically detailing how he conducted the investigation and his observations inside the Establishment. Although the maximum amount of damages may be applied, the maximum amount is severe compared to the illicit profit likely made. Therefore, this Court declines to

award Plaintiff $100,000.

When willful violations are committed, courts do not necessarily award the maximum amount, but in many instances, have instead multiplied the statutory damages by a factor of "'three to six'" in order to calculate the amount of enhanced damages. See Waters, 2013 WL 2948318, at *6 (multiplying statutory damages by five when the defendants charged admissions fees and were repeat offenders); J.R.'Z Neighborhood Sports Grille, 2010 WL 1838432, at *2 (multiplying statutory damages by three for a willful violation without evidence of repeat violations) (quoting J & J Sports Prods., Inc. v. Ribeiro, 562 F. Supp. 2d 498, 502 (S.D.N.Y. 2008)); see also J & J Sports Productions, Inc. v. Spar, 2008 WL 305038, at *2 (E.D.N.Y. Feb. 1, 2008) (awarding enhanced damages of $6,000, six times the base award against the defendant).

Specifically, courts have multiplied statutory damages by three when evidence showed that no admissions fees were charged and that the defendants were not repeat violators. See J & J Sports Prods., Inc. v. Castro Corp., No. 11-cv-00188, 2011 WL 5244440, at *5 (D. Md. Nov. 1, 2011) (multiplying statutory damages by three where no admission fee was charged); J.R.'Z Neighborhood Sports Grille, 2010 WL 1838432, at *2 (multiplying statutory damages by three for a willful violation without evidence of repeat violations) (quoting J & J Sports Prods., Inc. v. Ribeiro, 562 F. Supp. 2d 498, 502 (S.D.N.Y. 2008)). Similarly to the Castro and J.R.'Z Neighborhood Sports Grille cases, in the current case Defendant is not a repeat violator and did not charge an admission fee, thus the statutory damages will be multiplied by three.

Accordingly, after careful consideration of the pleadings and the record in this case, the Court multiplies statutory damages of $2,000 by three, making the enhanced damages an additional $6,000. This amount is appropriate because of the willful nature of Defendant's violation and Defendant's apparent intent to obtain commercial or financial gain.

### C. Attorney's Fees

In addition to statutory damages and enhanced damages, 47 U.S.C § 605(e)(3)(A)(iii) provides for the award of attorney's fees. Plaintiff requests $1,012.50 in attorney's fees in its memorandum supporting the motion for default judgment. (Doc. No. 10). The sum represents 4.5 hours of work at $225 per hour. Based on applicable law and facts known to the Court, this sum is reasonable. Id. As such, Plaintiff is awarded $1,012.50 in attorney's fees.

### CONCLUSION

After carefully analyzing the Nalley factors, Plaintiff is entitled to statutory damages of $2,000 under 47 U.S.C. § 605(e)(3)(c)(i)(II). This Court awards enhanced damages of $6,000 due to the willful nature of the violation and the interest of deterring Defendant as well as others from illegally intercepting cable broadcasts. Accordingly, Defendant is liable to Plaintiff for $9,012.50, which is the total of $2,000 in statutory damages, $6,000 in enhanced damages, and $1,012.50 in attorney's fees.

IT IS, THEREFORE, ORDERED that Plaintiff's Motion for Default Judgment (Doc. No. 10), is GRANTED. The Clerk's Office is directed to enter judgment in Plaintiff's favor in the amount of $9,012.50 and to CLOSE THE CASE.

IT IS SO ORDERED.

Signed: July 29, 2013

Frank D. Whitney
Chief United States District Judge